UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ryan Lee Kern,

        Petitioner,               Case No. 21-cv-2211 (WMW/LIB)

v.

                       **REPORT AND RECOMMENDATION**

J. Fikes,
*Warden*,

        Respondent.

This matter comes before the undersigned United States Magistrate Judge upon Petitioner Ryan Lee Kern's (hereinafter "Petitioner") Petition for Writ of Habeas Corpus. [Docket No. 1]. The present case has been referred to the undersigned for report and recommendation pursuant to a general referral in accordance with the provisions of 28 U.S.C. § 636 and Local Rule 72.1.

For the reasons set forth herein, the undersigned recommends that the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED without prejudice**.

**I.**    **Background**

On March 8, 2013, Petitioner was sentenced to a 210-month term of imprisonment after having been convicted of Conspiracy to Manufacture and Distribute 50 Grams or More of Methamphetamine Actual and 5 Grams or More of Methamphetamine Actual or Mix Within 1,000 Feet of a Protected Location, as well as, Possession and Aiding and Abetting the Possession of Pseudoephedrine with Intent to Manufacture Methamphetamine. (See, Exhibit B [Docket No. 8-2]). Petitioner's sentence was later reduced to a 204-month term of imprisonment. (Id.). Petitioner is currenting serving his term of imprisonment in the Federal Correctional Institution in Sandstone, Minnesota (hereinafter "FCI Sandstone"). (Id.).

Upon being committed to the custody of the Bureau of Prisons (hereinafter "BOP") following his sentencing, Petitioner—like all other inmates—was classified according to his custody level and security level. (Kensy Decl. [Docket No. 8] ¶ 4).

"In order to determinate an inmate's custody level and security level, the BOP will score an inmate on a Custody Classification Form, which is designed to evaluate factors the BOP has determined affect the level of supervision an inmate needs while incarcerated." (Id. ¶ 6). Pursuant to BOP Program Statement 5100.08, these factors include "whether the inmate has a detainer, the severity of the inmate's current offense, whether the inmate has a history of violence or receiving disciplinary reports, and program participation." (Id.; Program Statement 5100.08 [Docket No. 8-1]). In making this custody classification, the BOP considers all documents available in an inmates Central File, including the Presentencing Investigation Report (hereinafter "PSR") which is a report prepared by the United States Probation Office to aid the Court in sentencing an inmate. (Id. ¶ 12).

In evaluating the severity of Petitioner's offense, the BOP assigned to Petitioner the "Greatest Severity PSF [Public Safety Factor]." (Id. ¶ 19). Petitioner's convicted offenses did not meet the narcotics quantities necessary to be classified as a Greatest Severity PSF offense. However, the BOP determined that Petitioner's offense conduct was "most comparable to kidnapping (unlawful restraint), which is identified as a greatest severity offense in Appendix A" of Program Statement 5100.08. (Id.). In making this determination, the BOP relied upon the PSR used at Petitioner's sentencing, which noted that Petitioner's offense conduct included confining an identified minor in a "hutch . . . next to a workbench where" Petitioner manufactured methamphetamine, and which recommended considering said offense conduct in calculating Petitioner's sentence. (Id.). The PSR noted that the same hutch where the minor was confined

2

also contained the tools of methamphetamine production, including "a bottle reaction vessel with left over methamphetamine sludge." (Id. ¶ 15). The PSR also noted that the minor's hair tested positive for methamphetamine. (Id.).

In April 2020, FCI Sandstone considered Petitioner for possible transfer to home confinement pursuant to the CARES Act. (Id. ¶ 34–35). However, the BOP determined that CARES Act home confinement was inappropriate for Petitioner. (Id.). Although Petitioner's "specific offense of conviction was not violent, his conduct contained elements of violence," including his having placed a minor child "in danger of suffering injury or death." (Id.). This CARES Act assessment was made independently of Petitioner's custody classification. (Id.).

## II.     Petition. [Docket No. 1].

Through the present habeas action, Petitioner seeks an Order of this Court requiring the BOP to transfer him to home confinement. (See, Pet. [Docket No. 1] at 1). It is less than evident from the present Petition the exact arguments Petitioner raises in support of this request; however, liberally construing his pro se pleadings in his favor, Petitioner raises at least three overarching arguments in support of his request for transfer to home confinement. (See, Id.).

Petitioner first argues that the BOP erred by initially assigning him the Greater Severity PSF in 2013, because he was not convicted of any of the crimes specifically enumerated as Greater Severity PSF crimes in Program Statement 5100.08. (Id.). Petitioner implies that his having been assigned the Greater Severity PSF designation has prevented him from being transferred to home confinement. (Id.). Although Petitioner does not assert the mechanism through which he challenges the BOP's determination under Program Statement 5100.08 or his resulting assignment of the Greater Severity PSF designation, the Petition could be liberally

3

construed in his favor as raising said challenge pursuant to the Administrative Procedures Act (hereinafter "APA").

Petitioner also argues that he is entitled to transfer to home confinement pursuant to the CARES Act because of his health concerns, including his alleged increased vulnerability to the COVID-19 virus. (Id.).[1]

Lastly, Petitioner further contends that in light of his alleged increased vulnerability to the COVID-19 virus, his continued confinement any place other than home confinement is a violation of his Eighth Amendment right to be free from cruel and unusual punishment. (Id.).

### A. Subject Matter Jurisdiction

Before the Court may consider the merits of the present Habeas Petition, the Court must first determine whether it possess the requisite subject matter jurisdiction to adjudicate Petitioner's claims. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." See, Fed. R. Civ. P. 12(h)(3).

"Writs of habeas corpus may be granted by the Supreme Court, . . . the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Under § 2241, a writ of habeas corpus shall not extend to any individual unless the individual "is in custody in violation of the Constitution or laws or treaties of the United States." Id. "[T]he heart of habeas

---

[1] As this Court has noted, COVID-19 is an infectious illness caused by a novel coronavirus which has become a global pandemic. The COVID-19 virus is thought to pass from one person to another through the expulsion of respiratory droplets (e.g., coughing or sneezing), but it is thought to also survive on various surfaces for varying periods of time. A person infected with COVID-19 may exhibit symptoms ranging from zero symptoms (asymptomatic COVID-19) to respiratory failure, kidney failure, and death. Thus, a person without symptoms may still spread the virus. According to the CDC, individuals with certain underlying medical conditions are at a higher risk for severe illness from COVID-19. See, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. In response to the COVID-19 virus, there have been at least three vaccinees developed and approved for use in helping prevent the spread of the COVID-19 virus. See, https://www.cdc.gov/vaccines/covid-19/eua/index.html. Petitioner has received both doses of his COVID-19 vaccine. (Kensy Decl. [Docket No. 8] ¶ 36).

corpus" relief is "immediate release or a speedier release from" confinement. Preiser v. Rodriguez, 411 U.S. 475, 498 (1973).

The United States Supreme Court has to date "left open the question whether [inmates] might be able to challenge their confinement conditions via a petition for writ of habeas corpus." Ziglar v. Abbasi, 137 S.Ct. 1843, 1862–63 (2017). The Eighth Circuit Court of Appeals, however, has specifically concluded that habeas petitions are not the proper vehicle to remedy constitutional claims relating to the conditions of confinement. See, Spencer v. Haynes, 774 F.3d 467 (8th Cir. 2014) (citing Kruger v. Ericksen, 77 F.3d 1071 (8th Cir. 1996)).

In the Eighth Circuit, a habeas petitioner under § 2241 can only challenge the fact or duration of confinement. See, e.g., Spencer v. Haynes, 774 F.3d 467 (8th Cir. 2014); Heck v. Humphrey, 512 U.S. 477, 481 (1994); Kruger v. Erickson, 77 F.3d 1071, 1073 (8th Cir. 1996). Challenges to the conditions of confinement cannot be addressed in habeas proceedings. Mendez v. United States, No. 12-cv-28 (ADM/FLN), 2012 WL 1110138, at *2–3 (D. Minn. Jan. 24, 2012), report and recommendation adopted, 2012 WL 1110125 (D. Minn. Apr. 3, 2012). "If the prisoner is not challenging the validity of his conviction or the length of his detention, such as loss of good time, then a writ of habeas corpus is not the proper remedy." Kruger, 77 F.3d at 1073. "Where petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his custody, the district court lacks the power or subject matter jurisdiction to issue a writ." Id. In short, challenges to the conditions of confinement, unlike the length or legality of detention, are not cognizable claims in habeas petitions in the Eighth Circuit. Spencer v. Haynes, 774 F.3d 467, 469–70 (8th Cir. 2014); Kruger, 77 F.3d at 1073.

In the present case, Petitioner is raising a "conditions of confinement" claim under the guise of a habeas petition. (See, Pet. [Docket No. 1] at 1) (discussing his requested remedy by

5

referencing his "seeking a 'Quantum Change' in his condition of confinement"). Each of Petitioner's claims relates to the conditions of his confinement without attacking the validity of his sentence or the length of his custody. For example, in support of his request for a transfer to home confinement, Petitioner argues that such a transfer is warranted based not on some invalidity in the fact or duration of his confinement, but rather, on the basis of the condition of his confinement at FCI Sandstone, i.e., the risk of possibly being exposed to and infected with the COVID-19 virus. (See, Pet. [Docket No. 1] at 1). Even Petitioner's argument related to his being assigned the Greater Severity PSF designation and his corresponding APA argument lack any attack on the fact or duration of his confinement. Instead, Petitioner attacks his classification designation because it allegedly precludes his desired change in the conditions of his confinement: transfer to home confinement. (Id.).

In short, the current Habeas Petition fails to present any challenge to the validity of Petitioner's conviction or the length of his imposed term of incarceration. Rather, Petitioner presents challenges solely based on the nature of his living conditions at FCI Sandstone given the COVID-19 pandemic. (See, Pet. [Docket No. 1]). A writ of habeas corpus is not the proper vehicle for such a claim. See, e.g., Preiser v. Rodriguez, 411 U.S. 475, 489–90, 493 (1973); Spencer v. Haynes, 774 F.3d 467, 469–70 (8th Cir. 2014); Kruger, 77 F.3d at 1073–74.

Moreover, the present Petition does not seek either immediate release from imprisonment or a speedier release from a term of imprisonment. Instead, Petitioner seeks to be transferred to a different place of incarceration: home confinement. Home confinement is, indeed, considered a place of confinement or imprisonment. See, e.g., United States v. Houck, No. 20-2216, 2021 WL 2655056, at *3 (8th Cir. June 29, 2021) (discussing home confinement as a place of imprisonment noting that "the district court correctly held that it did not have authority to change

6

[defendant's] place of imprisonment to home confinement"); see, also, Elwood v. Jeter, 386 F.3d 842, 846 (8th Cir. 2004).[2] A prisoner is transferred to home confinement not released to home confinement because home confinement is a place of incarceration. See, United States v. Houck, No. 20-2216, 2021 WL 2655056, at *3 (8th Cir. June 29, 2021). Being transferred to home confinement is not a "release" from incarceration or imprisonment.

The Courts of this District, and the Eighth Circuit Court of Appeals, have consistently discussed home confinement, community confinement centers, and residential re-entry centers as places of confinement, incarceration, and imprisonment. Home confinement is a place of confinement or imprisonment; to hold otherwise would upend a plethora of well-established Eighth Circuit precedent. See, e.g., United States v. Houck, No. 20-2216, 2021 WL 2655056, at *3 (8th Cir. June 29, 2021); Elwood v. Jeter, 386 F.3d 842, 846 (8th Cir. 2004); Pollock v. Marske, No. 21-2570, 2022 WL 1218640 (8th Cir. 2022).

Petitioner also seeks the removal of the Greater Severity PSF designation assigned to him in 2013; however, here again this is not a request for immediate or speedier release from his term of incarceration. As Petitioner acknowledges, the removal of the Greater Severity PSF designation would, at best, increase the probability of his being transferred to home confinement, but for the reasons discussed above, this is not release. Moreover, Petitioner further acknowledges that even with the removal of the Greater Severity PSF designation he would still likely reside in a "[m]inimum security [c]amp." (Pet. [Docket No. 1] at 4).

---

[2] The Court finds unpersuasive Petitioner's reliance on the "quantum change doctrine." (See, Pet. [Docket No. 1] at 1). Under the "quantum change doctrine," some Courts have "conclude that confinement in a traditional federal prison is 'qualitatively different' from community confinement, and thus justifies utilization of § 2241 for challenging BOP regulations regarding placement in a CCC" or halfway house. Silva v. Paul, No. 18-cv-2177 (ECT/ECW), 2019 WL 542945, at *5 (D. Minn. Jan. 7, 2019), report and recommendation adopted, 2019 WL 536668 (D. Minn. Feb. 11, 2019), appeal dismissed, No. 19-1424, 2019 WL 4145562 (8th Cir. May 20, 2019). Even assuming solely for the sake of argument that this reasoning also applied to home confinement, it is inapplicable in this case because Petitioner seeks relief based on a conditions of confinement claim.

By Petitioner's own admissions, each of the constitutional violations alleged in the Petition, would ostensibly be cured if Petitioner were immediately transferred to home confinement. Unlike a circumstance where a hypothetical petitioner might argue that release from imprisonment outright is the only possible cure for a constitutional infirmity, the Petitioner here concedes that a transfer simply to a different place of confinement—home confinement—would cure the alleged constitutional infirmities in the present case.[3]

For these reasons, the Court concludes that it lacks the requisite subject matter jurisdiction to adjudicate the claims raised in the present habeas Petition. The undersigned thus recommends that the present Petition, [Docket No. 1], be **DENIED without prejudice**.

Even if Petitioner had raised a cognizable §2241 claim and the Court were to consider the merit of Petitioner's underlying claims, the undersigned would still recommend denying the present Habeas Petition. For the reasons discussed below, the Court lacks the authority to review the BOP's decision underlying Petitioner's CARES Act, APA, and Greater Severity PSF related claims, and Petitioner has failed to allege a cognizable claim under the Eighth Amendment.

### B. CARES Act

Throughout his Petition and other filings, Petitioner makes several specific references to the CARES Act, as well as, references to his desire to have the Bureau of Prison staff authorize his transfer to home confinement pursuant to the CARES Act. (See, e.g., Pet., [Docket No. 1], at 1–2; Pet.'s Reply [Docket No. 10] at 2, 6–7).

---

[3] The Eighth Circuit Court of Appeals has held that in certain circumstances the Court, when confronted with a pro se conditions-of-confinement-based habeas petition, should liberally construe the petition to permit the petitioner to pursue his or her claim in a civil complaint under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), but only after securing the permission of the petitioner to do so. See, Spencer v. Haynes, 774 F.3d 467 (8th Cir. 2014). This conversion option is untenable in the present case. For the reasons discussed below, the Court lacks the authority to entertain Petitioner's claims regardless of the procedural vehicle through which Petitioner might bring those claims before the Court.

Title 18 U.S.C. § 3624 provides that the BOP, "shall to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under the conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." 18 U.S.C. § 3624(c)(1). This authority granted to the BOP "may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). Yet § 3624(c)(4) specifically provides that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of Bureau of Prisons under section 3621" which in turn provides that the BOP "shall designate the place of the prisoner's imprisonment." 18 U.S.C. §§ 3624(c)(4); 3621(b).

On April 3, 2020, then Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act to expand the bank of potential inmates who may be considered for home confinement in light of the COVID-19 virus and its potential effect on prison populations. See, CARES Act, Public Law 116-136, March 27, 2020, 134 Stat 281, Sec. 12003(b)(2), at *516. Thereafter, the BOP immediately began reviewing all inmates incarcerated at facilities which had experienced the first COVID-19 cases and similarly situated facilities to determine which inmates might be suitable for home confinement.

In April 2020, BOP staff at FCI Sandstone considered Petitioner for transfer to home confinement. (Kensy Decl. [Docket No. 8] ¶ 34). Petitioner was denied transfer to home confinement based on his offense conduct as detailed in the Presentence Investigation Report (PSR) prepared for his 2013, sentencing. (See, Id.). As noted above, although Petitioner's "specific offense of conviction was not violent, his conduct [in confining a minor inside a cabinet

9

along with tools of methamphetamine production] contained elements of violence, and it was determined CARES Act home confinement was not appropriate." (Id. ¶ 35).

As this Court and other Courts in this District have repeatedly noted, the BOP has exclusive authority to determine the place of imprisonment for prisoners. See, e.g., 18 U.S.C. § 3624(c)(2); United States v. James, No. 15-cr-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr. 21, 2020). Nothing in the CARES Act, the First Step Act, or the Second Chance Act[4] altered the exclusivity of this authority to the BOP. See, e.g., 18 U.S.C. § 3624(c)(2); United States v. James, No. 15-cr-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr. 21, 2020); United States v. Kluge, No. 17-cr-61 (DWF), 2020 WL 209287, at *4 (D. Minn. Jan. 14, 2020). The Second Chance Act of 2007, the First Step Act, and the CARES Act merely give eligible inmates the possibility of being considered by the BOP for home confinement. See, Kluge, 2020 WL 209287, at *4. Although the various actions of Congress have expanded the potential opportunities for home confinement, Courts have observed that "it is [still the] BOP—not the courts—who decides whether home detention is appropriate . . . . Rather than mandate any particular home confinement decision, Congress instead directed [the] BOP to place prisoners on home confinement 'to the extent practicable.'" James, 2020 WL 1922568, at *2 (quoting Unites States v. Yates, No. 15-40063-01-DDC, 2019 WL 1779773, at *4 (D. Kan. Apr. 23, 2019)).

"Moreover, Courts have consistently held that placement [of imprisonment] questions are not reviewable." United States v. Vang, No. 16-cr-277 (DWF/KMM), 2020 WL 4704875, at *2 (D. Minn. Aug. 13, 2020) (collecting cases). "It is also well established that prisoners do not have a constitutional right to placement in a particular facility or place of confinement." James,

---

[4] The First Step Act, enacted into law on December 21, 2021, revised the provisions for early release to halfway houses and home confinement that had been in place under the Second Chance Act of 2007. See, 18 U.S.C. § 3624(c)(1).

10

2020 WL 1922568, at *2 (collecting cases). "Home confinement is a place of confinement." Id. (citing 18 U.S.C. § 3624(c)).

"[B]ecuase release to home confinement is a placement decision, the Court finds that it is solely within the BOP's discretion to dictate." Vang, 2020 WL 4704875, at *3 (citing 18 U.S.C. 3624(c)).[5] To the extent Petitioner seeks review of the BOP's CARES Act decision, that decision is not reviewable by this Court.[6]

### C. Greater Severity PSF and the Administrative Procedures Act

Petitioner challenges the BOP's 2013, determination, pursuant to BOP Program Statement 5100.08, that Petitioner should be assigned the Greater Severity PSF designation. As noted above, Petitioner does not set forth the mechanism through which he seeks to challenge the BOP's initial determination here; however, if liberally construed in his favor, his Habeas Petition could be read as raising said challenge pursuant the Administrative Procedures Act.

The APA provides a cause of action for individuals experiencing a legal harm because of federal agency action and offers a means for holding agency actions unlawful when they are arbitrary, capricious, or an abuse of discretion. See, 5 U.S.C. § 706(2)(A). The APA also provides, however, that courts may not review agency action when "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

---

[5] Although judicial review of BOP discretionary placement decisions is generally precluded, judicial review is not precluded for any allegations that the BOP's action is contrary to established federal law, violates the Constitution, or exceeds statutory authority. See, Ambrose v. Jett, No. 13-cv-2343 (PJS/JSM), 2013 WL 6058989, at *7 (D. Minn. Nov. 15, 2013). As already discussed, however, such challenges cannot stem from a conditions of confinement claim as Petitioner seeks to do in the present case. Further, even if the Court were to consider a challenge to the BOP's CARES Act decisions as being allegedly violative of Petitioner's Eighth Amendment right to be free from cruel and unusual punishment, for the reasons discussed below, Petitioner has failed to properly plead such a claim.

[6] As discussed above, to the extent Petitioner seeks for this Court to review the Bureau of Prisons' decision regarding transfer to home confinement outside of the authority of the CARES Act, that decision too is not reviewable by this Court. The Court lacks the subject matter jurisdiction to review the Bureau of Prisons' discretionary decision regarding transfer to home confinement. See, e.g., Simon v. L. LaRiva, No. 16-cv-146 (ADM/TNL), 2016 WL 1626819, at *4–7 (D. Minn. Mar. 10, 2016) (collecting cases), report and recommendation adopted, 2016 WL 1610603 (D. Minn. Apr. 21, 2016); Smith v. Warden of Duluth Prison Camp, No. 18-cv-2555 (WMW/LIB), 2019 WL 3325837, at *4–6 (D. Minn. Apr. 23, 2019), report and recommendation adopted as modified, 2019 WL 3323063 (D. Minn. July 24, 2019).

In the present case, Petitioner challenges his BOP 2013, Greater Severity PSF determination under Program Statement 5100.08. The BOP created Program Statement 5100.08 pursuant to 18 U.S.C. § 3621.

In relevant part, 18 U.S.C. § 3621(b) states:

> (b) Place of Imprisonment.—The Bureau of Prisons shall designate the place of the prisoner's imprisonment[.] . . . The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
>   (1) the resources of the facility contemplated;
>   (2) the nature and circumstances of the offense;
>   (3) the history and characteristics of the prisoner;
>   (4) any statement by the court that imposed the sentence—
>     (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
>     (B) recommending a type of penal or correctional facility as appropriate; and
>   (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
>
> . . . The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. . . . Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court.

18 U.S.C. § 3621(b). BOP Program Statement 5100.08 provides guidelines for BOP staff to make custody determinations in assessing "the history and characteristics of the prisoner" pursuant to § 3621 which in turn influences the inmate's place of imprisonment under §3621(b). In addition, Program Statement 5100.08 gives the BOP discretion in making these determinations so long as the BOP considers the factors set forth in § 3621(b).

It is well established that the BOP's determinations regarding prisoner placements are not subject to review under the APA. See, 18 U.S.C. § 3625 ("The provisions of [the APA] do not

12

apply to the making of any determination, decision, or order under this subchapter [18 U.S.C. §§ 3621 et seq.]."). Although 18 U.S.C. § 3625 "does not preclude judicial review of BOP rulemaking . . . [it] may well preclude judicial review of BOP decisions applying the final rule and Program Statement to particular inmates." Gatewood v. Outlaw, 560 F.3d 843, 846 n.2 (8th Cir. 2009) (citing Lopez, 531 U.S. at 240; Martin v. Gerlinski, 133 F.3d 1076, 1079 (8th Cir. 1998)). Thus, "[t]o find that prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625." Reeb v. Thomas, 636 F.3d 1224, 1227 (9th Cir. 2011); Davis v. English, No. 12-cv-1483 (JNE/LIB), 2013 WL 1149526, at *6 (D. Minn. Feb. 27, 2013). Instead, the BOP "has the discretion to transfer federal prisoners from one place of confinement to another at any time for any reason whatsoever or for no reason at all." Brown-Bey v. United States, 720 F.2d 467, 470 (7th Cir. 1983); see, Posey v. Dewalt, 86 F. Supp. 2d 565, 571 (E.D. Va. 1999).

Other Courts in this District have reached similar conclusions finding that 18 U.S.C. § 3625 precludes judicial review of BOP discretionary decisions under § 3621, including the Greater Severity PSF designation under Program Statement 5100.08. See, e.g., Pollock v. Kallis, No. 20-cv-359 (DSD/BRT), 2021 WL 2710013, at *3 (D. Minn. July 1, 2021), aff'd sub nom. Pollock v. Marske, No. 21-2570, 2022 WL 1218640 (8th Cir. 2022); Lipczynski v. Marques, No. 18-cv-1466 (JNE/BRT), 2018 WL 4956717, at *4 (D. Minn. Sept. 6, 2018), report and recommendation adopted, 2018 WL 4955236 (D. Minn. Oct. 12, 2018); Barakat v. Fisher, No. 13-cv-1296 (JNE/SER), 2013 WL 6058932 (D. Minn. Nov. 18, 2013); Davis, 2013 WL 1149526, at *6 (D. Minn. Feb. 27, 2013) (holding that allowing prisoners to bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made

pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625); Rios v. Fisher, No. 10-cv-4020 (PJS/TNL), 2012 WL 2814338, at *3 (D. Minn. June 19, 2012).

The foregoing preclusion includes review of the BOP's discretionary decision under § 3621 regarding an inmate's transfer to home confinement. For example, in Ambrose v. Jett, No. 13-cv-2343 (PJS/JSM), 2013 WL 6058989, at *7 (D. Minn. Nov. 15, 2015), for example, the petitioner there challenged the BOP's determination not to transfer him to home confinement to serve the remainder of his imprisonment. The Court, however, held that it did not have jurisdiction to review the BOP's ultimate discretionary decision, under 18 U.S.C. § 3621, to decline to place the petitioner in home confinement. Id. Likewise, this Court does not here have jurisdiction to review the BOP's decision to assign the Greater Severity PSF designation to Petitioner or the BOP's decision to decline to transfer Petitioner to home confinement in part because of that Greater Severity PSF designation.

"The BOP's classification determination was made under 18 U.S.C. § 3621, and those decisions are precluded by APA review. See, 18 U.S.C. § 3625. Consequently, '[j]udicial review of agency actions made pursuant to 18 U.S.C. § 3261, including actions made under [BOP Program Statement] 5100.08, is foreclosed . . . ." Pollock v. Kallis, No. 20-cv-359 (DSD/BRT), 2021 WL 2710013, at *3 (D. Minn. July 1, 2021) (alteration in original) (citing Aldaco v. Holder, No. 10-cv-590, 2011 WL 825624, at *11 (D. Minn. Jan. 7, 2011), report and recommendation adopted, 2011 WL 839388 (D. Minn. Mar. 7, 2011)), aff'd sub nom. Pollock v. Marske, No. 21-2570, 2022 WL 1218640 (8th Cir. 2022); see in accord, Pollock v. Marske, No. 21-2570, 2022 WL 1218640, at *1 (8th Cir. Apr. 26, 2022).

Therefore, because 18 U.S.C. § 3625 bars judicial review of both the BOP's discretionary decision of whether or not to transfer Petitioner to home confinement and the BOP's

discretionary decision as to the Greater Severity PSF designation initially assigned to Petitioner, any APA claim within the present Habeas Petition which challenges these discretionary decisions necessarily fails.[7]

### D. Eighth Amendment Claim

Lastly, Petitioner contends that in light of the COVID-19 pandemic and his alleged "long history" of "[c]hronic [l]ung [d]iseases," his continue detention at FCI Sandstone violates his right to be free from cruel and unusual punishment as secured by the Eighth Amendment to the United States Constitution. (See, Pet. [Docket No. 1] at 2–3). Other than general assertions related to his medical history, Petitioner does not allege any specific facts in support of this claim. (See, Id.). Instead, Petitioner conclusorily alleges that his detention at FCI Sandstone violates the Eighth Amendment because he has a "long history" of "[c]hronic [l]ung [d]iseases" which renders him more vulnerable to the COVID-19 virus.

The Eighth Amendment to the United States Constitution prohibits the Government from inflicting "cruel and unusual punishments" on persons convicted of crimes. See, Rhodes v. Chapman, 425 U.S. 337, 344–46 (1981). Any "deliberate indifference to serious medical needs of prisoners" constitutes cruel and unusual punishment, and therefore, it violates the Eighth Amendment "because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 32 (1993) (internal quotation and citation omitted); see, Gregoire v. Class, 236 F.3d 413, 417 (8th Cir. 2000) ("It is well established that the Eighth Amendment prohibition on cruel and unusual punishment

---

[7] To the extent Petitioner challenges the BOP's use of the 2013 Presentencing Investigation Report (PSR) in making its discretionary custody determination regarding the Greater Severity PSF, the Court lacks authority to review this decision as well. Pollock v. Kallis, No. 20-cv-359 (DSD/BRT), 2021 WL 2710013, at *5 (D. Minn. July 1, 2021), aff'd sub nom. Pollock v. Marske, No. 21-2570, 2022 WL 1218640 (8th Cir. 2022). "This Court has no jurisdictional authority to conclude it was error for the BOP to rely upon the PSR as adopted by the sentencing court." Id.

15

extends to protect prisoners from deliberate indifference from serious medical needs") (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)).

To demonstrate the "deliberate indifference" necessary for pleading an Eighth Amendment violation, a prisoner must show (1) that he had an objectively severe medical need, and (2) that prison officials knew of, but deliberately disregarded, that need. Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000). To constitute an objectively serious medical need or a deprivation of that need, the need or the deprivation either must be supported by medical evidence or must be so obvious that a layperson would recognize the need for a doctor's attention. Aswegan v. Henry, 49 F.3d 461, 464 (8th Cir.1995). "Specifically, the prisoner must show both (1) that a prison official had actual knowledge that the prisoner's medical condition created a substantial risk of serious harm to the prisoner's health, and (2) that the prison official failed to act reasonably to abate that risk." Baez v. Rosemack, No. 9-cv-2121 (RHK/LIB), 2011 WL 4062586, at *4 (D. Minn. Aug. 9, 2011) (citing Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir. 1997)).

"Deliberate indifference is akin to criminal recklessness." Drake v. Koss, 445 F.3d 1038, 1042 (8th Cir. 2006). Accordingly, a prisoner claiming deliberate indifference must plead "more than negligence, more even than gross negligence . . . ." Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Allegations that might suggest even "medical malpractice" are insufficient to support a claim for cruel and unusual punishment, and "mere disagreement with treatment decisions does not rise to the level of a constitutional violation." Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008).

Petitioner fails to allege any action or inaction by BOP staff which amounts to deliberate indifference to an objective, serious medical need. Instead, Petitioner asserts that the mere

existence of the COVID-19 pandemic combined with his generically alleged medical history of chronic lung disease is a de facto serious medical need and any continued detention in FCI Sandstone (rather than home confinement) is a per se deliberate indifference to said medical need. This type of generic COVID-19 based deliberate indifference claim has been squarely rejected by the Court. See, e.g., Blevins v. Schnell, No. 20-cv-1194 (NEB/KMM), 2021 WL 5088164, at *4 (D. Minn. Sept. 15, 2021) (collecting cases), report and recommendation adopted, 2021 WL 5087550 (D. Minn. Nov. 2, 2021); Evenstad v. Schnell, No. 20-cv-1464 (WMW/DTS), 2022 WL 617598, at *12 (D. Minn. Jan. 13, 2022), report and recommendation adopted, 2022 WL 616962 (D. Minn. Mar. 2, 2022); Jorgensen v. Birkholz, No. 20-cv-2349 (NEB/DTS), 2021 WL 3476709, at *12 (D. Minn. Feb. 18, 2021), report and recommendation adopted, 2021 WL 2935641 (D. Minn. July 13, 2021); Frohlich v. United States, No. 20-cv-2692 (PJS/HB), 2021 WL 2531188, at *3 (D. Minn. June 21, 2021), aff'd, 2021 WL 6424133 (8th Cir. Sept. 2, 2021). The mere existence of the COVID-19 virus and Petitioner's alleged physical conditions are alone insufficient "to show that [the BOP] behaved unreasonably in response to the risks presented by the virus." Blevins, 2021 WL 5088164, at *4.

Petitioner here does not refute that the BOP has policies in place at FCI Sandstone to combat the spread of the COVID-19 pandemic inside FCI Sandstone. (See, Pet. [Docket No. 1]) (discussing portions of the BOP's response to COVID-19 at FCI Sandstone); Pet.'s Exhibit 3 [Docket No. 1-3] (providing portions of the materials distributed by FCI Sandstone regarding measures being taken to combat COVID-19 at FCI Sandstone). Petitioner may disagree with the BOP's response to the COVID-19 virus at FCI Sandstone, however, under controlling Eighth Circuit precedent by which this Court is bound, a disagreement over the proper medical treatment or response cannot support a claim for cruel and unusual punishment. See, e.g.,

Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008). Even assuming solely for the sake of argument that the BOP could have had a better response to the COVID-19 virus in place at FCI Sandstone, that does not rise to the level of a constitutional violation. Moreover, even if assuming solely for the sake of argument that FCI Sandstone staff's response demonstrates gross negligence and medical malpractice, since FCI Sandstone has and is in fact responding to the pandemic, under controlling Eighth Circuit precedent this still cannot support a claim for cruel and unusual punishment. See, e.g., Drake v. Koss, 445 F.3d 1038, 1042 (8th Cir. 2006); Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995); Popoalii v. Corr. Med. Servs., 512 F.3d 488, 499 (8th Cir. 2008).[8]

On the record now before the Court, Petitioner has failed to demonstrate that the BOP or its staff were deliberately indifferent to any objective, serious medical need of Petitioner to warrant finding a violation of Petitioner's Eighth Amendment rights prohibiting cruel and unusual punishment.

### III. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** the Petition for Writ of Habeas Corpus, [Docket No. 1], be **DENIED without prejudice**.

Dated: June 16, 2022                                              s/Leo I. Brisbois
                                                                  Hon. Leo I. Brisbois
                                                                  United States Magistrate Judge

---

[8] Indeed, although incarcerated in FCI Sandstone, Petitioner has also received there a full COVID-19 vaccination. (Kensy Decl. [Docket No. 8] ¶ 36).

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).